UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANK ROBERT STELLNER,      )
                            )
            Petitioner,     )      Case No. 1:07-cv-503
                            )
v.                          )      Honorable Janet T. Neff
                            )
KENNETH ROMANOWSKI,         )
                            )
            Respondent.     )
_____)

### REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, I recommend that the petition be dismissed for failure to state a meritorious federal claim.

**Facts & Procedural History**

Petitioner is presently incarcerated at the Gus Harrison Correctional Facility. In 2006, he pleaded guilty to kidnapping, MICH. COMP. LAWS § 750.349, and aggravated assault, MICH. COMP. LAWS § 750.81a, in Saint Joseph County Circuit Court. On March 29, 2006, the trial court sentenced Petitioner to eight to thirty years' incarceration for the kidnapping charge.[1]

Petitioner first filed a application for writ of habeas corpus and supporting documents (dockets #1, 2) on May 24, 2007. Petitioner also filed an amended petition on June 27, 2007 (docket #4). Petitioner provided the following statement of facts in his first application for writ of habeas corpus (docket #1):

> Petitioner was initially charged with assault with intent to murder and kidnapping. The charges were based on an incident which occurred on November 28, 2005[.] The only witness at the Preliminary Examination was the victim, Gerald Gibson. There were three other co-defendant's, Mr. Ertman, Mr. Mc[D]onald, and Mr. Colvin [who] were all present for the proceedings.
>
> Mr. Gibson testified that he and others participated in the manufacture of methamphetamine. (TR, p.11)[.] The manufacturing took place at Mr. Mc[D]onald[']s house, and Mr. Gibson characterized Mr. Mc[D]onald "as the Leader of the Drug Enterprise." (TR, p. 11).
>
> Petitioner only became involved at the beginning of November of (2005). (TR, p.11). Petitioner was characterized as a middle man who had methamphetamine customers. (TR, p.11[]). Petitioner also provided some pills. (TR, p.11). Mr. Ertman knew how to make methamphetamine and he provided supplies[.] (TR, p[]. 11-12). Mr. Colvin also knew how to make methamphetamine, and he also provided suppl[ie]s to be used in the manufacturing process. (TR, p.12[]).
>
> Mr. Gibson testified that there was really no organization, structure, or planning to the manufacturing production process. (TR, p. 12[]). Mr. Gibson became dissatisfied with his role, and decided that he wanted to cease his involvement[.] (TR, p.12[]). Mr. Gibson sent a number of voicemails and text

---

[1] Petitioner received a sentence of 191 days for the aggravated assault charge. (Ex. F to Pet. for Writ of Habeas Corpus; docket #1.) Petitioner, however, received a credit of 191 days for time served. (*Id.*)

messages to members of the group[,] which he characterized as childish. (TR, p. 13[]).

Mr. Gibson called Mr. Ertman so that he could straighten things out, get his tools, and end his participation in the group. (TR, p. 17-18). He made several calls to Mr. Ertman in an effort to complete the arrangements. (TR, p. 18). Eventually, Mr. Ertman picked Mr. Gibson up and took him to Mr. Ertman[']s trailer near Centreville, Michigan (TR, p. 19). The two had a friendly conversation on the way to the trailer. (TR, p. 20). The two entered the trailer and sat in the kitchen. (TR, p. 20).

Mr. Gibson testified that Mr. Ertman's trailer had a small methamphetamine laboratory in it. (TR, p. 20). While he and Mr. Ertman were talking, Mr. Gibson heard a car door slam. (TR, p. 22). Mr. Ertman opened the door, and Mr. Mc[D]onald and the Petitioner entered the residence. (TR, p. 22). Mr. Mc[D]onald immediately hit Mr[.] Gibson on the side of the head. (TR, p. 23). After the first blow, the men, including Petitioner beat Mr. Gibson by hitting and kicking him. (TR, p. 23). He remembered one occasion where Petitioner held him and Mr. Mc[D]onald hit Mr. Gibson in the stomach. (TR, p. 24).

Mr. Gibson recalled that Mr. Colvin may have hit him once. (TR, p. 25). Mr. Mc[D]onald pointed his finger as if it were a gun at Mr. Gibson. (TR, p. 25). Petitioner allegedly told Mr. Gibson that he was going to die. (TR, p. 26). Mr. Colvin allegedly stated that he didn't know whether Mr. Gibson was going to live or die. (TR, p. 25-26). Mr. Ertman may have hit him once, but he was the one who collected materials[,] which could be used to bind Mr. Gibson. (TR, p. 27).

Mr. Gibson had no idea how long the incident lasted. (TR, p. 27-28). Mr. Gibson described how he was bound. (TR, p. 28-29). He recalled that Petitioner had duct-taped his upper torso[.] (TR, p. 29).

Mr. Gibson testified that Petitioner picked him up and carried him out of the door[.] (TR, p. 31)[.] All four men were present when this occurred. (T[R], p. 31). Petitioner threw Mr. Gibson into the back of a pickup. (TR, p. 32**[]**). Mr. Mc[D]onald and Petitioner got into the pickup and drove off. (TR, p. 32).

Mr. Gibson was able to open the cap on the pickup truck. (TR, p. 33). When the pickup stopped, Mr. [G]ibson threw himself out of the vehicle onto the roadway. (TR, p. 34). Mr. Gibson was able to free himself and began yelling for help. (TR, p. 35). A car came by and stopped. (TR, p. 35). The police were called, and Mr. Gibson was transported to one hospital and then transferred to another hospital.

> He described his injuries as including lacerations, broken or cracked ribs, and broken or cracked facial bones. (TR, p. 35-41.) He was in the hospital for less than 24 hours. He was able to walk while at the hospital.
>
> Based on this testimony, Petitioner and his three co-defendants were bound over. (TR, p. 124-126). In summarizing the testimony, the Court stated that Mr. Colvin made threats about living or dying and participated in the beating; Mr. Mc[D]onald made verbal threats and struck and kicked the victim; Petitioner made a statement about dying and struck and kicked the victim, and Mr. Ertman supplied material[s] to assist in [the] binding of [the] victim and hit the victim. (TR, p. 125).
>
> * * *
>
> The pre-sentence report also contained Petitioner[']s version of the offense. In that version, he stated that he participated because he was threatened. Petitioner stated that he struck Mr. Gibson six times and that and that [sic] he held Mr. Gibson down while he was being bound. As to the methamphetamine activities, Petitioner stated that he had provided some pills on two occasions. He had received methamphetamine and had re-sold it.

(Attach. to Pet. for Writ of Habeas Corpus at ix-xii; docket #1.)

Petitioner raised the following claims on appeal in the Michigan Court of Appeals: (1) Petitioner's due process and equal protection rights were violated because Michigan law does not afford him an appeal as of right to contest his sentencing guideline calculations; (2) the trial court should resentence Petitioner because the court allegedly scored (i) Offense Variable (OV) 7 "Aggravated Physical Abuse" erroneously at 50 points, (ii) OV 13 "Continuing Pattern of Criminal Behavior" wrongfully at 10 points, (iii) OV 14 "Leadership" erroneously at 10 points, and (iv) OV 7, OV 13 and OV 14 after considering facts related to a dismissed charge; and (3) the trial court violated Petitioner's rights when the court increased his minimum sentence based upon facts not determined by a jury or admitted to by Petitioner.

The Michigan Court of Appeals denied Petitioner's application for leave to appeal for lack of merit in the grounds presented on August 24, 2006. The Michigan Supreme Court denied leave to appeal on May 4, 2007 because it was not persuaded it should review the issues raised. *See*

*People v. Stellner,* 730 N.W.2d 475, 476 (Mich. 2007) (Kelly, J., dissenting). Petitioner did not seek certiorari in the United States Supreme Court; nor did he file a motion for relief from judgment under Michigan Court Rule 6.500 *et seq.* Petitioner now raises the same grounds for habeas corpus relief.

## Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 791 (2000). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. This Court also may not consider decisions of lower federal courts in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). Thus, the inquiry is

"limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

Where the state court has not articulated its reasoning, the federal courts are obligated to conduct an independent review to determine if the state court's result is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. *See Harris*, 212 F.3d at 943; *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). Where the circumstances suggest that the state court actually considered the issue, the review is not *de novo*. *Onifer*, 255 F.3d at 316. The review remains deferential

because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *Harris*, 212 F.3d at 943. However, the Sixth Circuit recently has clarified that where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." In such circumstances, the court conducts *de novo* review. *McKenzie*, 326 F.3d at 727 (limiting *Harris* to those circumstances in which a result exists to which the federal court may defer); *see also Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts). Since the Michigan Court of Appeals did not reach the merits of Petitioner's claims, this Court will conduct *de novo* review.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## **Discussion**

    A.    **Appeal**

Petitioner first argues that MICH. COMP. LAWS § 770.3(1)(d)[2] violated his due process and equal protection rights because the Michigan statute precludes Petitioner from appealing as of right the sentence imposed for his plea-based convictions. There is no federal constitutional right to a criminal appeal. *Evitts v. Lucey,* 469 U.S. 387, 393 (1985). Michigan has a two-tier appellate system comprising of the Michigan Court of Appeals and the Michigan Supreme Court. The Michigan Supreme Court hears appeals by leave only. MICH. COMP. LAWS § 770.3(6). "Having provided such an avenue, however, a State may not 'bolt the door to equal justice' to indigent defendants." *Halbert v. Michigan,* 545 U.S. 605, 610 (2005) (citing *Griffin v. Illinois,* 351 U.S. 12, 23-24 (1956) (Frankfurter, J., concurring in judgment) ("when a State deems it wise and just that convictions be susceptible to review by an appellate court, it cannot by force of its exactions draw a line[,] which precludes convicted indigent persons, . . ., from securing such a review . . . .")). Rather, there is only a right to see that due process and equal protection rights are preserved in any appellate scheme. *Id.*

Prior to 1994, the Court of Appeals adjudicated appeals as of right from all criminal convictions. *People v. Bulger,* 614 N.W.2d 103, 106-07 (Mich. 2000). To reduce the workload of the Court of Appeals, a 1994 amendment to the Michigan Constitution changed the process for appeals following plea-based convictions. *Id.* As amended, the Michigan Constitution provides in pertinent part that "an appeal by an accused who pleads guilty or nolo contendere shall be by leave of the court." MICH. CONST., ART. 1, § 20. The Michigan Constitution specifically denies a due

---

[2]MICH. COMP. LAWS § 770.3(1)(d) provides that "all appeals from final orders and judgments based upon pleas of guilty or nolo contendere shall be by application for leave to appeal."

process right to an appeal as of right. A defendant convicted by plea who seeks review in the Michigan Court of Appeals must file an application for leave to appeal pursuant to Michigan Court Rule 7.205. In response, the Michigan Court of Appeals may, among other things, "grant or deny the application; enter a final decision; [or] grant other relief; . . . ." MICH. CT. R. 7.205(D)(2). If the appellate court grants leave, "the case proceeds as an appeal of right, . . . ." MICH. CT. R. 7.205(D)(3).

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Because a fundamental right is not implicated in this case and persons pleading guilty to a crime are not a suspect classification for equal protection purposes, Petitioner is not entitled to strict scrutiny. *See Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990). Instead, the decision to restrict those who plead guilty to a crime to an appeal by leave of court need only be rationally related to a legitimate governmental interest. *See United States v. Kras*, 409 U.S. 434, 446 (1973); *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). A rational basis exists for the distinction between the appellate rights of those persons pleading guilty and those found guilty in trials. The legislative history of the current constitutional provision explains that persons who plead guilty have either acknowledged their guilt or agreed to waive their constitutional rights, so the need for an appeal is not present in the same way as it is after a trial. *See City of New Orleans v. Dukes,* 427 U.S. 297, 303 (1976)

("[w]hen local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations"). Therefore, the Michigan Court of Appeals' conclusion that Petitioner's due process and equal protection claims lacked merit did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent. *See* 28 U.S.C. § 2254(d).

B.  **Sentencing Errors**

Petitioner originally was charged with kidnapping and assault with intent to commit murder. According to his plea agreement, Petitioner pled guilty to kidnapping and aggravated assault at his sentencing. Petitioner contends, however, that the trial court scored (i) OV 7 "Aggravated Physical Abuse" erroneously at 50 points, (ii) OV 13 "Continuing Pattern of Criminal Behavior" wrongfully at 10 points, (iii) OV 14 "Leadership" erroneously at 10 points, and (iv) OV 7, OV 13 and OV 14 after considering facts related to the dismissed charge of assault with intent to commit murder.

In conducting habeas review, a federal court may grant a writ of habeas corpus only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Edwards v. Carpenter*, 529 U.S. 446, 454 (2000) (Breyer, J. & Stevens, J., concurring); *Robinson v. Stegall*, 355 F.3d 916, 917 (6th Cir. 2004). The Supreme Court has made it clear that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("reemphasiz[ing] that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions") (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) and *Pulley v. Harris*, 465 U.S. 37, 41 (1984)).

Claims concerning the improper scoring of sentencing guidelines are state law claims and are typically not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cheatham v. Hosey*, No. 93-1319, 1993 WL 478854, at *2 (6th Cir. Nov. 19, 1993) (departure from sentencing guidelines is an issue of state law, and, thus, not cognizable in federal habeas review); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law). There is no constitutional right to individualized sentencing. *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

Although state law errors are generally not reviewable in a federal habeas corpus proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. Feb. 15, 2005) (citations omitted), *cert. denied*, 126 S. Ct. 1024 (2006); *see also Doyle*, 347 F. Supp. 2d at 485 (a habeas court cannot set aside, "on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking") (citation omitted). A sentence may violate due process if it is based upon material

"misinformation of constitutional magnitude." *Koras,* 123 F. App'x at 213 (quoting *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. at 443, 441, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *see also Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)).

1.     **Offense Variable 7 "Aggravated Physical Abuse"**

Petitioner argues that the trial court erroneously scored OV 7 at fifty points. MICH. COMP. LAWS § 777.37(1)(a) states that fifty points should be assigned if a "victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." Sadism, under MICH. COMP. LAWS § 777.37(3), is defined as "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offenders gratification." Since "every kidnapping" and assault involves the likelihood of physical injury and/or psychological or emotional injuries to the victim, Petitioner argues that fifty points should not have been scored unless the abuse was "exceptionally severe or out of the ordinary." (Br. in Supp. of Pet. at 13; docket #2.) Petitioner claims that the victim's injuries were not excessive or severe because (i) the victim was discharged in less than twenty-four hours from the hospital; (ii) he was able to walk out of the hospital; (iii) the victim was working by the time of the sentencing; and (iv) the police only observed lacerations and a black eye on the victim. (*Id.* at 13-14.)

The trial court listed the following reasons for its decision to score OV 7 at fifty points:

> 1.) the investigating officer found the victim with plastic ties and duck tape binding his legs and body and with a towel around his neck bound with duck tape; 2.) the victim complained about pain; 3.) the police observed lacerations and a black eye; 4.) the victim identified his assailants; 5.) the victim stated that he had been wrapped in a comforter and placed in the back of a truck, but that he had managed to escape; 6.) he was admitted to the Hospital and discharged the following day; 7) his injuries were described as including fractures, contusions, bruises, and abrasions; 8.) the victim told the police that the incident was retaliation and was related to the manufacture of methamphetamine; 9.) the victim had been involved in methamphetamine manufactur[ing] for approximately six months; 10.) the victim wanted out; 11.) the victim called Mr. Ertman to arrange a meeting to clear up misunderstandings; 12.) Mr. Ertman picked up the victim [] and took him to Mr. Ertman's residence; 13.) Mr. Mc[D]onald and the Petitioner arrived at the Ertman residence, and Mr. Mc[D]onald immediately struck the victim; 14.) the victim was struck and verbal threats were uttered; 15.) Mr. Colvin arrived, and the hitting, kicking, and punching continued; 16.) Mr. Colvin was trying to get information from the victim; 17.) the victim estimated that the beating lasted about an hour; 18.) the victim was bound with duct tape and zip ties; 19) the victim was wrapped in a blanket and secured with zip ties; 20.) Mr. Mc[D]onald made a verbal threat and made a gun motion with his hand; 21.) the victim claimed to be in fear for his life; 22.) the subjects threw him into the back of the Petitioner[']s truck; 23.) Petitioner was driving the truck and Mr. Mc[D]onald was a passenger; and 24.) the victim was able to escape.

(Attach. to Pet. for Writ of Habeas Corpus at xiv-xv; docket #1.)

In this case, Petitioner's sentence clearly was not the result of material "misinformation of constitutional magnitude." *Tucker*, 404 U.S. at 447. While Petitioner disagrees with the trial court's determination that excessive brutality occurred, he does not cite any materially false information that was before the trial court in scoring OV 7. Rather, Petitioner claims that there was a lack of evidence supporting the trial court's decision. From these facts, the Michigan Court of Appeals' conclusion that Petitioner's claim lacked merit did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent with respect to the scoring of OV 7. *See* 28 U.S.C. § 2254(d).

    2.  **Offense Variable 13 "Continuing Pattern of Criminal Behavior"**

  Petitioner alleges that the trial court incorrectly assessed ten points for OV 13. According to MICH. COMP. LAWS § 777.43(1)(d), ten points are assessed when the offense was "part of a pattern of felonious criminal activity directly related to membership in an organized criminal group." The trial court explained that Petitioner's score was based on the methamphetamine manufacturing operation. (Attach. to Pet. for Writ of Habeas Corpus at xvi; docket #1.) Petitioner argues that he was only a customer of the methamphetamine operation and never received a share of the profits from the others. (Br. in Supp. of Pet. at 23; docket #2.) In furtherance of his position, Petitioner states: "[w]hile Mr. Gibson testified that Petitioner provided some pills to the group, there was no elaboration of the circumstances surrounding this alleged act . . . . Thus, the pills could have been provided in return for personal use drugs or in payment for drugs that Petitioner was purchasing from the others." (*Id.*)

  Once again, Petitioner failed to demonstrate that the evidence upon which the sentencing court relied was false. Petitioner was characterized as a middle man who had methamphetamine customers, and who had been involved in the manufacturing for approximately six months. (Attach. to Pet. for Writ of Habeas Corpus at ix; docket #1.) Petitioner merely argues that the trial court should have reached a different conclusion on the same facts. He has failed to demonstrate that the Michigan Court of Appeals' decision is contrary to, or an unreasonable application of, United States Supreme Court precedent. *See* 28 U.S.C. § 2254(d).

       3.      **Offense Variable 14 "Leadership"**

Petitioner argues that the trial court erroneously scored OV 14 at ten points. For OV 14, MICH. COMP. LAWS § 777.44(1) states that ten points should be scored if the offender was a "leader in a multiple offender situation." If three or more offenders are involved, there can be more than one leader. MICH. COMP. LAWS § 777.44(2)(b). Petitioner argues that he should not be considered a leader because (i) he was not the one who arranged the meeting with the victim; (ii) the meeting was not held at his residence; (iii) he did not strike the victim first; and (iv) Petitioner did not instruct anyone else to assault the victim. (Br. in Supp. of Pet. at 18; docket #2.) Once again, Petitioner fails to cite any materially false information that was before the trial court in scoring OV 14. *See Tucker*, 404 U.S. at 447. Petitioner's statement of the facts clearly show that he played more than a subordinate role in the matter. The beating did not begin until Petitioner was at the trailer. While Mr. McDonald hit the victim first, Petitioner and the other co-defendants continued to beat the victim for an hour. Petitioner provided the truck, and Petitioner helped restrain and bind the victim, and threw him into the bed of Petitioner's pickup truck. Petitioner was the driver of the truck. Only one other person was with Petitioner when Petitioner drove off with the victim tied up in the back. (Attach. to Pet. for Writ of Habeas Corpus at x; docket #1.) Under these circumstances, Petitioner was not sentenced on the basis of "misinformation of constitutional magnitude." *Tucker*, 404 U.S. at 447. Therefore, the Michigan Court of Appeals' conclusion that Petitioner's claim lacked merit did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent with respect to the scoring of OV 14. *See* 28 U.S.C. § 2254(d).

4. **Scoring OV-7, OV-13 and OV-14 based on a Dismissed Charge**

Petitioner argues that the trial court misscored OV-7, OV-13 and OV-14 based on facts from the dismissed charge of assault with intent to commit murder, MICH. COMP. LAWS § 750.83. When Petitioner pled guilty to kidnapping and aggravated assault, the court dismissed the charge of assault with intent to commit murder. The only constitutional issue posed by Petitioner's claim is whether the trial court violated Petitioner's constitutional right to due process by sentencing him on the basis of inaccurate information. As discussed above, the trial court did not considering materially false information in calculating OV-7, OV-13 and OV-14. Petitioner argues that the trial court relied on unproven allegations when it considered the dismissed charge. The Supreme Court, however, has stated that a sentencing court may consider a wide range of factors in determining the applicable sentencing range, including "conduct of which a defendant has been acquitted." *United States v. Watts,* 519 U.S. 148, 154 (1997). Although Petitioner was not acquitted of the assault with intent to commit murder charge following a trial, the dismissal of the crime is a comparable situation. Under Michigan law, all crimes may be counted when assessing OV 13, "regardless of whether the offense resulted in a conviction." MICH. COMP. LAWS § 77.43(2)(a). Therefore, Petitioner was not sentenced on the basis of "misinformation of constitutional magnitude." *Tucker*, 404 U.S. at 447. The Michigan Court of Appeals conclusion that Petitioner's claim lacked merit did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent. *See* 28 U.S.C. § 2254(d).

C.     ***Blakely v. Washington*, 542 U.S. 296 (2004)**

Petitioner argues that the trial court judge violated his Sixth Amendment right to a trial by jury by using facts to enhance his minimum sentence which had not been admitted by Petitioner or found by a jury beyond a reasonable doubt. Petitioner bases his argument largely on the United States Supreme Court holding in *Blakely v. Washington*, 542 U.S. 296 (2004). *Blakely* concerned the State of Washington's determinate sentencing system, which allowed a trial judge to elevate the maximum sentence permitted by law on the basis of facts not found by the jury but by the judge. Applying the Washington mandatory sentencing guidelines, the trial judge found facts that increased the maximum sentence faced by the defendant. The Supreme Court held that this scheme offended the Sixth Amendment, because any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Blakely,* 542 U.S. at 301 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

Unlike the State of Washington's determinate sentencing system, the State of Michigan has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum term. The maximum sentence is not determined by the trial judge, but is set by law. *See People v. Drohan,* 715 N.W.2d 778, 789-92 (Mich. 2006) (citing MICH. COMP. LAWS § 769.8). Only the minimum sentence is based on the applicable sentencing guideline range. *Id.; see also People v. Babcock*, 666 N.W.2d 231, 237 n.7 (Mich. 2003) (citing MICH. COMP. LAWS § 769.34(2)). Therefore, under Michigan law, the trial judge sets the minimum sentence (within a certain range), but can never exceed the maximum sentence. *Drohan,* 715 N.W.2d at 789.

Because the trial court can never exceed the maximum sentence set by statute, Michigan's indeterminate sentencing scheme, unlike the determinate sentencing scheme at issue in *Blakely*, does not infringe on the province of the finder of fact, and, thus, does not run afoul of *Blakely*. *See Blakely,* 542 U.S. at 304-05, 308-09.  Since the trial court sentenced Petitioner well within the parameters of Michigan's indeterminate sentencing scheme, it did not violate his Sixth Amendment rights.  *See, e.g., Gray v. Bell*, No. 1:06-cv-611, 2007 WL 172519, at *3 (W.D. Mich. Jan. 19, 2007)*; Pettiway v. Palmer,* No. 1:06-cv-132, 2006 WL 1430062, at *1 (W.D. Mich. May 23, 2006); *Stanley v. Jones,* No. 1:06-cv-49, 2006 WL 1459832, at *2 (W.D. Mich. May 23, 2006); *Jones v. Trombley*, No. 2:07-cv-10139, 2007 WL 405835, at *3 (E.D. Mich. Jan. 31, 2007)*; Mays v. Trombley*, No. 2:06-cv-14043, 2006 WL 3104656, at *3 (E.D. Mich. Oct. 31, 2006); *Worley v. Palmer,* No. 2:06-cv-13467, 2006 WL 2347615, at *2 (E.D. Mich. Aug. 11, 2006); *George v. Burt*, No. 2:04-cv-74968, 2006 WL 156396, at *5 (E.D. Mich. Jan. 20, 2006); *Walton v. McKee*, No. 2:04-cv-73695, 2005 WL 1343060, at *3 (E.D. Mich. June 1, 2005).  Accordingly, Petitioner is not entitled to relief from the sentence imposed by the trial court.

## **Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be summarily dismissed pursuant to Rule 4 because it fails to raise a meritorious federal claim.  I further recommend that a certificate of appealability be denied.  *See Slack v. McDaniel*, 529 U.S. 473 (2000).

Dated:  January 11, 2008　　　　　　　　　　　　/s/ Hugh W. Brenneman, Jr.
　　　　　　　　　　　　　　　　　　　　　　HUGH W. BRENNEMAN, JR.
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).